UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-00254-TWP-DKL |
| | ) | |
| THE TRAVELERS INDEMNITY | ) | |
| COMPANY OF AMERICA, | ) | |
| JODI BONDY, and TIMOTHY BONDY, | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on cross-motions for summary judgment filed by Westfield Insurance Company's ("Westfield") (Filing No. 42) and The Travelers Indemnity Company of America's ("Travelers") (Filing No. 51). The dispute in this case arises from an underlying Management Agreement between Hokanson Companies, Inc. ("Hokanson") and Prestwick KJ, LLC ("Prestwick"), which established Hokanson as the property manager of Prestwick's property located at 5230 and 5250 East U.S. Highway 36, Danville, Indiana ("the Property"). The case is based on an underlying lawsuit brought by Defendants Jodi Bondy ("Ms. Bondy") and Timothy Bondy (collectively the "Bondys") after Ms. Bondy allegedly slipped and fell on ice at the Property. The parties' cross-motions dispute which insurance carrier, Westfield or Travelers, is responsible for the defense and payment of the Bondys' claims. For the reasons set forth below, Westfield's motion is **DENIED** and Traveler's motion is **GRANTED**.

## I. BACKGROUND

The parties have stipulated to certain facts (Filing No. 43), which the Court presents below. On November 29, 2006, Prestwick hired Hokanson under the Management Agreement to serve as

the real estate manager for the Property. The Management Agreement was renewed through and including January 25, 2011. In June 2010, Travelers issued its Building Pac Policy No. I-680-5115L097-TIA-10 to Prestwick with effective dates of coverage of June 25, 2010 to June 25, 2011. In December 2010, Westfield issued its Commercial Package Policy No. TRA 3 420 078 to Hokanson with effective dates of coverage of December 1, 2010 to December 1, 2011. Ms. Bondy allegedly slipped on ice at the front entrance to Family Fun Fitness, a tenant of the Property, on January 25, 2011. At the time of the accident the Management Agreement was in full force, the Travelers policy was in full force, and the Westfield policy was in full force. On April 3, 2012, the Bondys filed their complaint for negligence against Hokanson in Hendricks County Circuit Court.

The Court finds the following additional facts are undisputed. The Management Agreement set forth the duties and responsibilities of both Prestwick and Hokanson. Hokanson was to manage the Property in Prestwick's best interest, perform duties customarily performed by managing agents, and efficiently and economically manage the Property in a manner equal to the standard of competent building managers in Indianapolis, Indiana. Further, Hokanson agreed to:

> indemnify, defend, and save [Prestwick] harmless from all liability, including expenses of defense, arising from any action taken or admitted to be taken by [Hokanson], its officers, agents or representatives, in the negligent performance of its duties under this Management Agreement or otherwise relating to, arising out of, or connected with [Hokanson's] breach of this Agreement.

Filing No. 1-1, at ECF p. 2. The Management Agreement also imposed an insurance obligation on Prestwick:

> [Prestwick] shall carry, at its expense, liability insurance covering liability for property damage and personal injury or death arising from the ownership and operation of the [Property], which insurance shall operate for the benefit of [Prestwick], as insured, and [Hokanson] as additional insured, against such claims and liability which may be incurred in the ownership, management and operation of the Buildings. A certificate of such insurance shall be supplied to [Hokanson].

2

The amount of such insurance shall be such reasonable amount as [Prestwick] shall determine. As used in this subparagraph, the term [Hokanson] will include any legal entity owned and controlled by [Hokanson] which may be the employer of employees engaged in the operation and maintenance of the [Property].

[Filing No. 1-1, at ECF p. 3](Filing No. 1-1, at ECF p. 3). As stated above, Prestwick secured a policy, under which Hokanson was a secondary insured, with Travelers. Hokanson also secured its own policy with Westfield.

Following the Bondys' lawsuit on April 9, 2012, Hokanson notified Travelers and requested that Travelers undertake the defense and indemnification of Hokanson. On April 16, 2012, Westfield tendered the defense and indemnification of Hokanson to Travelers. Travelers refused to undertake the defense of Hokanson, so Westfield hired a law firm to defend against the Bondys' lawsuit pursuant to a reservation of rights under the Westfield policy. Again, on November 5, 2012, Westfield tendered the defense of Hokanson to Travelers, but Travelers refused.

The Travelers and Westfield insurance policies contain identical "other insurance" provisions. The provisions state,

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A and B of this Coverage Part, our obligations are limited as follows:
>
> > a. Primary Insurance
> >
> > > This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then we will share with all that other insurance by the method described in c. below.
> >
> > ….
> > c. Method of Sharing
> >
> > > If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

> If any of the other insurance does not permit contribution by equal shares, we will not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

[Filing No. 1-5, at ECF pp. 16-17](#) (Travelers policy); [Filing No. 1-7, at ECF pp. 42-43](#) (Westfield policy).

The Bondys' lawsuit and underlying incident falls within the definitions for coverage under both policies. Prestwick and Hokanson are both named defendants in the underlying Bondy lawsuit, and Travelers is providing a defense for Prestwick only. Westfield filed this action for declaratory judgment that Travelers has the sole primary and noncontributory duty under the Travelers policy to defend and indemnify Hokanson against the Bondy lawsuit.

## II. <u>LEGAL STANDARD</u>

Summary judgment is only appropriate by the terms of Rule 56 where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This notion applies equally where, as here, opposing parties each move for summary judgment in their favor pursuant to Rule 56. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir. 1996). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., Inc. v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmovant, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration*

*Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (quoting *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

### III.    DISCUSSION

The essential question before the Court is whether the Management Agreement establishes the Travelers policy as primary insurance, such that Travelers is responsible for the defense and indemnification of Hokanson. There are no disputed facts and the sole determination will turn on the interpretation of the policies and Management Agreement, which is proper for disposition on summary judgment. *Stewart v. TT Commercial One, LLC*, 911 N.E.2d 51, 55 (Ind. Ct. App. 2009). Travelers contends that the Management Agreement should have no applicability to the Court's determination because an insurer's obligations "arise from its policy and cannot be expanded by agreement between the insured and another." *Am. Underwriters, Inc. v. Auto-Owners Mut. Ins. Co.*, 719 F.2d 900, 902 (7th Cir. 1983). Instead, the policies' "other insurance" clauses dictate that the two insurance companies shall equally contribute to the loss. Travelers' argument is essentially that Westfield has attempted to improperly expand the insurance coverage provided by Travelers' "other insurance" clause and ignores the importance of the Management Agreement's indemnification clause.

**A.     Standing**

The Court first addresses Travelers' argument that Westfield lacks standing to enforce the Management Agreement. See *Harold McComb & Son, Inc. v. JP Morgan Chase Bank, NA*, 892 N.E.2d 1255, 1258 (Ind. Ct. App. 2008) ("[O]nly the parties to a contract, those in privity with the parties, and intended third-party beneficiaries under the contract may seek to enforce the contract."). To have standing, Westfield must show it has an injury in fact that is fairly traceable

5

to the defendant's conduct and likely to be redressed by the requested relief. *Edgewood Manor Apartment homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 771 (7th Cir. 2013).

The Court disagrees with Travelers' assertion and relies upon *Royal Ins. Co. of Am. v. Nat'l Union Fire Ins.Corp.*, 186 F. Supp. 2d 895 (N.D. Ind. 2002). *Royal* dealt with a similar issue: the import of an underlying agreement between insureds in a dispute between insurance companies. Given that the *Royal* court found an actual controversy—whether one insurance company could seek subrogation given the existence of an insurance obligation clause—the Court finds likewise that Westfield may seek its claim against Travelers. Westfield is undertaking the defense and any further payment of the Bondys' claim. Westfield alleges that this is an injury traceable to Travelers' failure to undertake Hokanson's defense. Finally, if Westfield prevails, the declaratory judgment would redress its claim. Whether Travelers believes Westfield's claim is a "circular riddle" or not, see [Filing No. 56, at ECF p. 5](Filing No. 56, at ECF p. 5), Westfield is entitled to a declaration of whether Travelers is the primary insurance provider.

**B.     Whether Travelers is the Primary Insurance Provider**

The related cases *Doherty v. Davy Songer, Inc.*, 195 F.3d 919 (1999) and *Royal* 186 F. Supp. 2d at 895, are instructive to the issue of insurance obligation clauses. In *Doherty*, the Seventh Circuit decided whether a subcontractor's employee was entitled to indemnification from the subcontractor when a contract between the contractor and subcontractor required the subcontractor to secure insurance covering the negligence of its employees. At issue was the underlying agreement, which included an insurance obligation clause similar to that found in the Management Agreement at issue in the current case. Citing Indiana law, the Seventh Circuit explained that "parties may shift, by contract, their burdens of risk, and therefore *affect the obligations of their insurers*." *Id.* at 926 (emphasis added). Thereafter, the subcontractor's insurer

filed a declaratory judgment action against the contractor's insurance company seeking contribution for half of the settlement it paid to the employee. *See Royal*, 186 F. Supp. 2d at 896. Guided by Indiana law and the Seventh Circuit's *Doherty* discussion, the court stated:

> Agreements which impose upon one party the duty to provide insurance have been construed to benefit both parties. In such commercial agreements, a provision that one party will maintain insurance against certain risks indicates an intention to grant immunity to the other party from liability. Thus, the party who agreed to purchase insurance has no cause of action against the party for whose benefit the insurance was intended regardless of the fault of the intended insured.

*Id.* at 899. The *Royal* court went on to say that, "Indiana law is clear that private agreements, while they cannot expand coverage, can foreclose an insurer who has paid a loss pursuant to its policy from pursuing others for contribution." *Id.* at 900. This concept relies upon the theory that an underlying insurance obligation agreement does not *expand* an insurer's coverage, but can affect its obligations with respect to other parties.

The current case, however, does not deal with Travelers seeking subrogation or contribution in contravention of the insurance obligation clause found in the Management Agreement. Rather, it's the near opposite claim: Westfield seeks to enforce the insurance obligation against Travelers, to whom Prestwick and Hokanson shifted their risk of loss. See *Morsches Lumber, Inc. v. Probst*, 388 N.E.2d 284, 287 (Ind. Ct. App. 1979) ("With agreements to insure, the risk of loss is not intended to be shifted to one of the parties; it is intended to be shifted to an insurance company in return for a premium payment."). Travelers raises the Management Agreement's indemnity clause, through which Hokanson agreed to hold Prestwick harmless and indemnify against loss. "Under the rules of contract construction, the provisions of a contract are to be construed together and specific terms control over general terms." *Arnold v. Burton*, 651 N.E.2d 1202, 1204 (Ind. Ct. App. 1995); *see Claire's Boutique, Inc. v. Brownsburg Station Partners LLC*, 97 N.E.2d 1093, 1100 (Ind. Ct. App. 2013) ("Where the parties have agreed to a

7

specific term, an apparently inconsistent general statement must yield to a more specific term."). Here, the Court finds that the insurance obligation clause takes primacy over the indemnification clause. The section under which the indemnification clause appears is introduced with the statement, "The Managing Agent, in the performance of the duties herein assumed, shall . . . ." [Filing No. 1-1, at ECF. p. 1](). The section under which the insurance obligation clause appears is introduced with the statement, "The principal, pursuant to obligations herein assumed, expressly agrees . . . ." [Filing No. 1-1, at ECF p. 2](). Prestwick "expressly agree[d]" to secure insurance, under which Hokanson would be covered and thus, Prestwick transferred Hokanson's risk of loss to an insurance company. Indiana law is clear that an insurance obligation clause shifts the risk of loss from *either* party, including Hokanson, to an insurance company. The Management Agreement's insurance obligation clause is more specific than the indemnification clause, and the Court finds that in the event the two clauses would be inconsistent, the insurance obligation clause is primary.

So, the Court must turn to the question of whether the Management Agreement establishes Travelers as the primary insurance such that the parties' "other insurance" clauses do not apply. As discussed above, the enforcement of an insurance obligation clause has been squarely applied in subrogation actions, an issue that is not before the Court. The Court could not find any cases where the facts matched the current situation, and thus, the Court must determine how Indiana courts would decide the issue.

The Court recognizes three problems with Westfield's position. First, the insurance obligation clause, while it can affect an insurance company's obligations—i.e., ability to seek subrogation or contribution—it cannot change or expand existing coverage. "Other insurance" clauses are "insurance carriers' attempts to reduce or renounce their liability where concurrent

insurance exists." *McMurray v. Nationwide Mut. Ins. Co.*, 878 N.E.2d 488, 491 (Ind. Ct. App. 2007). Westfield concedes that, "[a]ssuming, arguendo, that the two policies' 'other insurance' clauses control the primacy issue, Westfield agrees that the Travelers Policy and the Westfield Policy provide pro-rata co-primary coverage to Hokanson against the Bondys' Lawsuit." [Filing No. 53, at ECF p. 3](#) n.1. The Court agrees that a strict reading of the insurance policies dictates this result.

Second, Westfield relies on cases in which a party failed to secure insurance as required under an agreement's insurance obligation. For example, in *Rieth-Riley Constr. Co. v. Auto-Owners Mut. Ins. Co.*, 408 N.E.2d 640 (Ind. Ct. App. 1980), Rieth-Riley, the lessee, was required by contract with the lessor to procure an insurance policy, which it failed to do. The lessor's insurance company then settled a claim that should have been covered by Rieth-Riley's insurance, and then sued Rieth-Riley for breach of contract. The court found that Rieth-Riley breached the contract by failing to procure insurance and was then required to reimburse the lessor's insurance for the settlement. In this and other cases, the party to the underlying contract, not an insurance company, was held liable for failing to procure insurance as required by contract. These cases, while supporting the validity of insurance obligation clauses, do not speak to which of competing insurance policies would be primary.

Third, Westfield, attempts to wield *Doherty*, *Royal*, and similar cases as a sword—forcing Travelers to be the primary insurance without direct case law or policy language to support the position. But this interpretation requires reading past the holdings that a private contract "can foreclose an insurer who has paid a loss pursuant to its policy from pursing others for indemnity or, we believe, contribution." *Am Underwriters, Inc.*, 719 F.2d at 902. Indiana law has supported

the use of private agreements as a shield, but the Court has found no law that supports Westfield's offensive position.

Therefore, the Court has determined that Indiana law does not support Westfield's position. In this absence, the insurance policies govern and the "other insurance" clauses dictate that the parties are each required to contribute their pro-rata share.

## IV. CONCLUSION

Accordingly, Travelers' Motion for Summary Judgment (Filing No. 51) is **GRANTED**. Westfield's Motion for Summary Judgment (Filing No. 42) is **DENIED**.

**SO ORDERED.**

Date: 9/29/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

James L. Lowry
KENDALL WOOD LOWRY & KESSINGER
jlowry@kwlklaw.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Lewis S. Wooton
LEWIS WAGNER LLP
lwooton@lewiswagner.com

Mark R. Smith
SMITH FISHER MAAS HOWARD & LLOYD, P.C.
msmith@smithfisher.com

the use of private agreements as a shield, but the Court has found no law that supports Westfield's offensive position.

Therefore, the Court has determined that Indiana law does not support Westfield's position. In this absence, the insurance policies govern and the "other insurance" clauses dictate that the parties are each required to contribute their pro-rata share.

## IV. CONCLUSION

Accordingly, Travelers' Motion for Summary Judgment (Filing No. 51) is **GRANTED**. Westfield's Motion for Summary Judgment (Filing No. 42) is **DENIED**.

**SO ORDERED.**

Date: 9/29/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

James L. Lowry
KENDALL WOOD LOWRY & KESSINGER
jlowry@kwlklaw.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Lewis S. Wooton
LEWIS WAGNER LLP
lwooton@lewiswagner.com

Mark R. Smith
SMITH FISHER MAAS HOWARD & LLOYD, P.C.
msmith@smithfisher.com